UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                    Plaintiff,

                                                    CRIMINAL CASE NO. 05-50031

v.

ALFRED MARROGI ZETOUNA,                             HONORABLE PAUL V. GADOLA
                                                    U.S. DISTRICT COURT
                                    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant was indicted on May 4, 2005 for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Before the Court is Defendant's motion to suppress evidence, filed on May 25, 2005. The Court held a hearing on the matter on June 30, 2005. At that time, the Court allowed supplemental briefing and accepted a video tape of the traffic stop for review. The Court has considered the supplemental briefing and reviewed the video tape. For the following reasons, the Court will deny the motion.

I.      **Background**

On April 27, 2005, at approximately 7:30 p.m., Grand Blanc Township Police Officers were traveling southbound on South Saginaw Street when they noticed that Defendant's vehicle, which was traveling in the opposite direction, had tinted windows. The officers made a u-turn and effected a traffic stop by activating their overhead lights. Defendant then slowed his vehicle near Hill Road, allegedly threw a firearm and a pill bottle out of the passenger-side window, and came to a stop after pulling into the driveway of a General Motors plant. The officers detained Defendant and searched

him and his car.  The officers found no additional contraband in Defendant's car, but allegedly discovered that Defendant was wearing a bullet-proof vest.  After recovering the firearm and pill bottle, which contained forty Vicodin pills, the officers placed Defendant under arrest.

## II.    Legal Standard

The Fourth Amendment prohibits only unreasonable searches or seizures.  A traffic stop is a seizure under the Fourth Amendment.  *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000).  If a search is conducted without a warrant, as it was here, it is considered *per se* unreasonable, unless it fits into one of the established exceptions.  *See Katz v. United States*, 389 U.S. 347 (1947).  The Government has the burden of proving the applicability of a Fourth Amendment warrant exception to the search or seizure in question.  *See United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002) ("The Government has the burden of proof to justify a warrantless search.")**.**

For a warrantless traffic stop based on a violation of a civil traffic infraction to be reasonable, the police officer must have probable cause to believe that a violation has occurred.  *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 (6th Cir. 2004); *Whren v. United States*, 517 U.S. 806, 810 (1996).  So long as an officer has probable cause to believe that a traffic violation has occurred, the resulting stop is not a violation of the Fourth Amendment even if it is pretextual; the officer's motive is irrelevant.  *Gaddis*, 364 F.3d at 771; *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).  The legitimacy of a traffic stop is judged objectively "by undertaking 'an objective assessment of an officer's actions in light of the facts and circumstances then known to him."  *Ferguson*, 8 F.3d at 388 (quoting *Scott v. United States*, 436 U.S. 128, 137 (1978)).

**III.    Analysis**

The officers' reason for stopping Defendant was that he was driving a vehicle with darkly tinted driver and front passenger side windows.  Grand Blanc Township Ordinance § 257.709, which is identical to M.C.L. § 257.709, provides:

> (1) A person shall not drive a motor vehicle with any of the following:
>
> > (a) A sign, poster, **nontransparent material, window application, reflective film, or nonreflective film upon or in the front windshield, the side windows immediately adjacent to the driver or front passenger, or the sidewings adjacent to and forward of the driver or front passenger**, except that a tinted film may be used along the top edge of the windshield and the side windows or sidewings immediately adjacent to the driver or front passenger if the material does not extend more than 4 inches from the top of the windshield, or lower than the shade band, whichever is closer to the top of the windshield.

M.C.L. § 257.709(1)(a).

Defendant argues that the officers' stop of Defendant's vehicle was objectively unreasonable because the officers did not have probable cause to believe that Defendant's front windows were illegally tinted.  Defendant maintains that the statute distinguishes between windows with tint applied by the factory, which are not prohibited, and windows with tint applied after-market, which are prohibited.  According to Defendant, the officers could not have determined whether Defendant's windows had factory tinting or after-market tinting in the brief space of time the officers had to examine Defendant's vehicle as it approached the officers from the opposite direction.

Defendant attempts to support his argument that the statute distinguishes between factory tinting and after-market tinting by pointing out that the exclusion provision of the statute, M.C.L.

§ 257.709(3)(b), mentions "smoked or tinted glass" while the prohibition section in question only refers to a material, application or film.  M.C.L. § 257.709(3)(b) (exclusion provision); M.C.L. § 257.709(1)(a).  This argument ignores the fact that (3)(b) is an exclusion provision.  Therefore, the implication is that what is not excluded from the prohibition is still prohibited.  Instead, the Court concludes that M.C.L. § 257.709 distinguishes between factory tinting and after-market tinting from the plain language of the statute.

M.C.L. § 257.709 does not prohibit tinting that is not a material, application, or film.  M.C.L. § 257.709(1)(a) refers to "[a] sign, poster, nontransparent material, window application, reflective film, or nonreflective film."  In other words, tinting that is within the window itself, rather than a separate material applied to the windows, is not prohibited  by the statute.  The Government disagrees and points to an unpublished Michigan Court of Appeals case which held: "The prosecution contends that the plain language of M.C.L. § 257.709; MSA 9.2409 prohibits any tinting on the driver's and front passenger's windows, regardless of the degree of visibility or transparency.  We agree."  *People v. Lee*, 2001 WL 716906, at *2 (Mich. App. 2001) (unpublished).  *Lee*, however, deals only with tinting that is accomplished through the application of a material to a window:

> The emphasized language of subsection (a) clearly demonstrates that it is illegal to apply any material with "tinting" properties to the front driver's or passenger's windows, except for a four-inch shade band similar to what is commonly found on windshields. Nowhere in subsection (a) is reference made to a particular degree or darkness of tint required before the prohibition of the statute kicks in. Such reference, rather, is found in subsection (b), wherein treatment of rear passenger windows and the rear windscreen is limited to material with a solar reflectance of less than 35%. In this case, because defendant's vehicle was a two-door car, the only window on which tint could legally have been applied was the rear windshield.

*Id.* at *2.

4

As proof that vehicles do come from the factory with tinting, Defendant points to National Transportation Safety Regulation 49 C.F.R. § 571.205, which sets standards for the glass that is allowed in motor vehicles. 49 C.F.R. § 571.205 provides: "Glazing materials for use in motor vehicles must conform to ANSI/SAE Z26.1-1996 unless this standard provides otherwise." 49 CFR § 571.205, S5.1. ANSI/SAE Z26.1-1996 is a national standard that mandates a light transmittance of "not less than 70%." *Id.* at Standard 5.2.3. As Defendant points out, it is illegal to manufacture or sell a vehicle that does not meet this standard. 49 U.S.C. §§ 30111, 30112(a). Thus, any factory installed tinting in the driver or passenger's front side window can only have a tinting that restricts 30% of the light.

During the hearing, Officer Reyne testified that they "observed that the vehicle had dark tinted windows on both the passenger and driver's side window along with the back windows also." Tr. at 37. Officer Carpentier testified that "[t]he whole vehicle was difficult to see inside. I couldn't see the driver myself when we passed." Tr. 50. Officer Reyne also testified that the tinting was so dark that he could not see Defendant through the driver's side window and that the tinting on the driver's side windows was the same as the tinting on the rear door windows. Tr. 38-39. The video tape of the incident clearly shows that the Defendant's rear window and rear door windows were tinted to the point that they were nearly opaque. There can be no question that they block more than 70% of the light that would otherwise be transmitted through them because they block nearly all of the light. Since Defendant's driver's side window was tinted as much as the rear windows, the driver's side window must have been tinted to restrict more than 70% of the light. Ergo, the driver's side window had tinting that was not applied by the factory, but rather must have been applied after

5

market.  If the tinting on Defendant's driver's side was not applied by the factory, such that it was within the glass itself, then it must have been applied after-market as a material, application, or film.

Defendant argues that because Officer Carpentier answered "no" to the Court's question of whether he could determine by looking at a car with tinted windows if the tint was put in the glass by the manufacturer or if it was applied by the driver or owner of the vehicle, the officers therefore could not have determined whether there was a violation of the statute.  Tr. 61.  Nevertheless, the question asked Officer Carpentier did not distinguish between front or rear windows.  Furthermore, Officer Carpentier indicated that he had never seen a new vehicle from the manufacturer with the drivers and passenger's side windows visibly tinted, and when asked the following question: "[w]hen you observed this vehicle which did have clearly tinted driver's side windows you inferred that that was a window tinting that had been applied after the car was purchased?" Officer Carpentier answered, "yes."

Based on the above reasoning, the Court concludes that the officers had probable cause to believe that Defendant's windows were tinted in violation of M.C.L. § 257.709.  Furthermore, the tinting here is so dark, that the Court concludes that the time the officers had to examine Defendant's vehicle was enough time to determine that the tinting on Defendant's driver's side window was not factory installed.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress [docket entry 11] is **DENIED**.

**SO ORDERED.**

Dated:   September 22, 2005                            s/Paul V. Gadola

6

HONORABLE PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   September 23, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

_____ Robert W. Haviland _____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:   Christopher J. McGrath; Kenneth M. Scott            .


s/Ruth A. Brissaud_____
Ruth A. Brissaud, Case Manager
(810) 341-7845

7